## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| WICHITA FIREMAN'S RELIEF ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 11-1029-KGG |
| KANSAS CITY LIFE INSURANCE CO., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Before the Court are the following motions:

1)   Defendant's "Motion for Protective Order Governing the Deposition of Dr. Charlotte Lee" (Doc. 80);

2)   Plaintiff's "Motion for Amended Scheduling Order" (Doc. 92);

3)   Plaintiff's "Motion to Clarify Offer of Judgment and to Strike" (Doc. 93);

4)   Plaintiff's "Motion to Compel Deposition of Charlotte A. Lee, M.D., the Medical Director for Kansas City Life Insurance Company, at the Company's Principle Place of Business, or, in the Alternative, in Wichita, Kansas, and for Sanctions

1

Pursuant to Fed.R.Civ.P. 37(d)(1)(A)(I) and/or 37(c)(1) (Doc. 95);

5)   Plaintiff's "Motion to Quash Subpoenas" (Doc. 98); and

6)   Plaintiff's "Motion Requesting the Court to Consider Plaintiff's Motion to Compel the Deposition of Defendant's Medical Director, Charlotte Lee, M.D., Out of Time" (Doc. 108).

All but Plaintiff's Motion to Clarify and Strike (Doc. 93) were addressed at a hearing before the Court on December 6, 2012.[1]   Having reviewed the submissions of the parties and allowing them to present additional argument at hearing, the Court is prepared to rule on these motions.

## BACKGROUND

Plaintiff in the matter before the Court is Wichita Firemen's Relief Association, a public body organized under the Firefighters Relief Act, K.S.A. §40-1701, et seq., to administer public funds and consisting of members of public fire departments.  (See Doc. 1-1.)  This case results from an alleged on-duty injury sustained by Captain Urban Eck, an employee of the Wichita Fire Department, while fighting a local fire. Plaintiff contends the injury necessitated heart surgery

---

[1]  Also pending before the Court is Plaintiff's "Motion for Order to Show Cause." While briefly discussed at the December 6 hearing, this motion was not ripe at the time. As such, it will be decided by the Court in a separate Order.  The request to amend the Scheduling Order has been addressed separately by the Court's entry of the Second Revised Scheduling Order (Doc. 126).

and that Captain Eck died as a result of surgical complications.  Plaintiff, which had a group policy of insurance issued by Defendant, brings its present claims seeking payment of an accidental death and dismemberment (AD&D) benefit which Plaintiff contends was a rider to the insurance policy issued by Defendant. Plaintiff alleges that Defendant has "failed to support its claim that Captain Eck was diseased or ill before he ruptured the tissues of his heart on December 13, 2009," and, therefore, Defendant's refusal to pay the AD&D benefit is "without just cause and excuse."  Other relevant facts will be summarized in the context of the specific, relevant motions, below.

As evidenced by the Court's prior Order (Doc. 97) on Plaintiff's "Motion to Compel Discovery" – as well as the volume and subject matter of motions currently pending before the Court – this case has been plagued by disagreement between counsel.  As stated at the December 6, 2011, hearing, the Court is concerned that the value/costs of fighting these skirmishes outweighs the value of the underlying issues of the larger case.  The Court urges the parties to remain focused on the goal of resolving the ultimate disputes in their case.

## DISCUSSION

**A.**   **Defendant's "Motion for Protective Order Governing the Deposition of Dr. Charlotte Lee" (Doc. 80).**

Pursuant to a contract, Dr. Charlotte Lee holds the position of Defendant's

"medical director."  (Doc. 81-3.)  Although Defendant performs its business in

Kansas, Dr. Lee is located in Mountain View, California.  According to Defendant,

she is an independent contractor who also contracts with nine other insurance

companies.

In moving for a protective order regarding the deposition of Dr. Charlotte

Lee, Defendant makes the following arguments:

> September 1, 2011 is not an appropriate date for Dr.
> Lee's deposition, that KCL has no authority to compel
> Dr. Lee to attend a deposition; that any deposition that is
> taken of Dr. Lee take place in Mountain View,
> California; that WFRA's Notice is an improper method to
> compel Dr. Lee's attendance at a deposition; that WFRA
> must compensate Dr. Lee for her time spent preparing
> and attending a WFRA-requested deposition; and that the
> documents WFRA requested that Dr. Lee produce be
> limited . . .

(Doc. 81, at 10.)  As discussed at the hearing, the date of September 1, 2011, for

which the deposition was noticed is now moot.  The Court will, however, address

Defendant's other objections.

**1.     Location of the deposition**.

Defendant argues that the contract it maintains with Dr. Lee "does not

discuss any ability on KCL's behalf to require Dr. Lee to travel or attend a

deposition in carrying out her duties as Medical Director."  (Doc. 81, at 5.)

Further, Defendant contends that any such deposition should occur in Mountain

4

View, California, where Dr. Lee resides.  (*Id.*, at 6.)

Plaintiff responds that Dr. Lee's "employment contract contains a provision that requires Dr. Lee to defend Insurance Company from any and all claims, actions, suits or proceedings arising out of, directly or indirectly, her rendering of services."  (Doc. 83, at 6.)  Plaintiff also argues that its claim "arises out of Dr. Lee rendering services to Insurance Company, because it relied on her Medical Director Statement to deny plaintiff's claim for benefits."  (*Id.*)  Thus, according to Plaintiff, "Dr. Lee is obligated to appear and defend the Insurance Company, and is under its control and authority, as stated in the employment contract."  (*Id.*)  Plaintiff also contends that Dr. Lee is not a true independent contractor, but is rather an employee of Defendant because, as "medical director," Dr. Lee "holds herself out to the public" as an employee.  (*Id.*, at 6-7.)  Plaintiff cites the case of ***Crawford v. Kansas Dept. of Human Resources*** for this proposition.  17 Kan.App.2d 707, 710 (1989), *rev. denied* 246 Kan. 766 (1990).

At the hearing, Defendant asked the Court not to overlook the "simplest" question in this analysis:  whether Dr. Less is an agent or employee of any company, let alone of Defendant.  Defendant contends that it is without dispute that Dr. Lee is has no actual or apparent authority to make any actual decisions for Defendant on any issue, including coverage and personnel/staffing.  According to

Defendant, Dr. Lee merely requests medical records which she reviews in the context of rendering a medical opinion regarding a particular claim; Defendant then uses that medical opinion to make the ultimate coverage (or underwriting) decisions.  Dr. Lee does not make these ultimate decisions, according to Defendant.  Rather, Defendant makes the coverage decisions after considering Dr. Lee's opinions.  As such, Defendant argues, Dr. Lee has no authority to bind Defendant with her opinions.

Defendant also contends, and Plaintiff does not controvert, that Dr. Lee contracts with nine other insurance companies.  Defendant argues that although Dr. Lee has the title of its "medical director," a title alone does not create a legally recognizable agency or employment relationship.  Defendant further contends that even if the Court were to accept Plaintiff's argument that Dr. Lee is its employee, she could not be required to travel more than 100 miles for her deposition absent being an officer, which she is not.

After careful consideration of the parties' arguments, the Court rules that Defendant is required to produce Dr. Lee in Kansas for her deposition.  Dr. Lee, in the context of the this case, is an agent (at least similar to a managing agent) of the Defendant.  She is Defendant's medical director.  The court is not persuaded by Defendant's efforts to distance itself from a title it bestowed.  There is little doubt

that she was a primary actor for Defendant in regard to the decision at issue in this lawsuit.  The questions of whether she is an independent contractor, or whether her contract with Defendant empowers Defendant to compel her to travel for her deposition, are beside the point.  A corporation "is responsible for producing its representatives for deposition" and "such depositions are ordinarily taken at the corporation's principal place of business . . . ."  **Moore v. Pyrotech**, 137 F.R.D. 356, 357 (D. Kan. 1991) (citing 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2103, at 374-75 (2d ed. 1970)).  As such, it is the Court's decision that Dr. Lee should be produced by Defendant at its corporate headquarters in Overland Park (or nearby).  If the contractual relationship between Dr. Lee and Defendant does not permit Defendant to compel her to attend there, she may be produced in California with Defense paying travel expenses for one of Plaintiff's attorneys.

The Court also finds that given Dr. Lee's relationship with Defendant, a notice to depose her is sufficient to require Defendant to produce her.  In addition, in this case Dr. Lee is a fact witness and is not entitled to compensation for her preparation or testimony.  Further, although Dr. Lee a fact witness, this does not mean that Plaintiff is precluded from questioning Dr. Lee regarding her opinions that relate to her actions in this case.

7

**2.      Documents requested from Dr. Lee**.

The Court will next address the issues relating to the documents Plaintiff

requested in the deposition notice.  Defendant has objected to categories 3 (Dr.

Lee's application for a Kansas medical license), 4 (Dr. Lee's medical license), 9

(all calendar or diary entries relating to work performed in this case), 10 (Dr. Lee's

current CV and previous drafts), and 11 (a list of all insureds about whom Dr. Lee

has written reports in the past five years).  (Doc. 71; Doc. 81, at 8-9.)

As stated at the hearing, the documents requested in categories 3 and 4

relating to Dr. Lee's medical licensure in Kansas are proper.  Plaintiff has now

received this information directly from the State, so this dispute is now moot.

In regard to the requested calendar entries (category 9), because the Court

finds that Dr. Lee is Defendant's agent (and a fact witness), attorney-client and

work product privileges may apply.  Even though the documents at issue have not

been requested through a Rule 34 document request, Defendant is ordered to

provide a compliant privilege log to the Plaintiff before Dr. Lee's deposition of

requested documents which the defense claims are privileged.  This will assist the

parties in preparing for the deposition and the deposition can be used to clarify the

privilege log to determine if there are still issues relating to the documents

produced or withheld.

In regard to category 10, Dr. Lee will produce any CV she has created for any purpose since January 1, 2001.  Finally, as to category No. 11, the Court is not persuaded by Defendant's argument that it does not have access to this information because Dr. Lee is an independent contractor and the information belongs to other insurance companies.  The Court will require Dr. Lee to produce a list of insureds concerning whom she has written an opinion in the last 5 years.  This list will be treated as confidential under the protective order currently entered in this case.

Having reached a decision on the issues pertaining to Defendant's motion for a protective order, the Court will not consider Plaintiff's Motion to Compel (Doc. 95) which it considers to be an improper sur-reply (and mooted by the decision above).  This also moots Plaintiff's Motion to Consider Out of Time (Doc. 108).

**3.**     **Sanctions for Factual Misstatements by the Defense**.

In its Memorandum in Support of Motion for Protective Order (Doc. 81), Defendant made the following statement of fact in support of its objection to Plaintiff's request for Dr. Lee's Kansas licence and application:  "KCL has previously stated to WFRA that Dr. Lee is not licensed to practice medicine in the State of Kansas, and has never applied for a medical license in the State of Kansas. As such, KCL objects to such requests . . . ."  (Doc. 81, at 8.)  This statement is

true only to the extent that Defendant had previously also made this fact

representation to Plaintiff.  The operative claim in this statement, that Dr. Lee did

not have a Kansas license and had never applied for one is, Defendant now

concedes, untrue.  In support of its objection to the request for Dr. Lee's prior

medical opinions, Defendant stated "Dr. Lee currently serves patients as a medical

doctor."  (Doc. 81, at 9.)  This statement is also untrue.  Defendant has conceded

this in subsequent filings and withdrawn these contentions.  However, Defendant

did not, in written submissions, offer any explanation for the misstatements.  In

oral argument on this issue, defense counsel, upon the Court's urging, provided a

general explanation that counsel and client had made some erroneous assumptions

and miscommunications concerning Dr. Lee's licensing history in Kansas and

medical practice.  The problem was caused, in part, by haste in preparing the brief.

Plaintiff has requested sanctions for this misstatement.  Plaintiff uncovered

the truth concerning Dr. Lee's licencing history through an inquiry to the Kansas

Board of Healing Arts.  There is no evidence that, aside from injury to the

relationship between counsel, Plaintiff has been specifically harmed by the

misstatements.  Defendant's prompt recantation of the assertions when they were

discovered helped minimize the harm.

The Court does not believe that defense counsel or Defendant intended to

mislead Plaintiff or the Court. While the misstatements were unintentional, the evidence falls short of establishing good faith.  The misstatements were material. Presenting facts to Plaintiff's counsel (in discussions concerning discovery requests) and to the Court in briefs, without a basis for the statements, is sanctionable under Fed.R.Civ.P. 37 and 11.  Because damage was minimized and because the errors were, in the court's judgment, caused by mistake rather than design, substantial sanctions are not warranted.  The Court's discretion in its ruling concerning the production of Dr. Lee for deposition in Kansas is exercised, in part, as a sanction for this conduct.  Otherwise, the Court will leave Defendant and its counsel with an admonition against further lapses.

**B.**   **Motion to Clarify Offer of Judgment and to Strike (Doc. 93)**.

Fed.R.Civ.P. 68 sets out the procedure for making an offer of judgment as follows:

> (a)   **Making an Offer; Judgment on an Accepted Offer**.
> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued.  If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service.  The clerk must then enter judgment.
>
> (b)   **Unaccepted Offer**.  An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except

11

in a proceeding to determine costs.

(c)   **Offer After Liability is Determined**.  When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment.  It must be served within a reasonable time – but at least 14 days – before the date set for a hearing to determine the extent of liability.

(d)   **Paying Costs After an Unaccepted Offer**.  If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Defendant served its Offer of Judgment on September 22, 2011 (Doc. 90).  The offer was phrased in pertinent part:

(1)   The principal amount of $101,000, such amount to include WFRA's request for attorneys' fees; plus

(2)   Prejudgment interest upon the amount set forth in Paragraph (1), pursuant to K.S.A. § 16-201, from January 25, 1010 through October 10, 2011, such interest being in the amount of $17,266.85; plus

(3)   WFRA's costs now accrued, not to include attorneys' fees.

Acceptance of the offer set forth above shall act as a complete release of any and all claims WFRA may have or has asserted against KCL.

(Doc. 94, at 1.)

In its motion, Plaintiff argues that Defendant's Offer is ambiguous, incomplete, and defective, is frivolous, and that it contains impermissible conditions.  In particular, Plaintiff contends that the references to "such amount to

12

include WFRA's request for attorneys' fees" in paragraph 1 and "costs now

accrued, not to include attorneys' fees" in paragraph 3 are contradictory, rendering

the Offer of Judgment ambiguous and improper.  (Doc. 94, at 6-8.)  "A defendant

'cannot invoke Rule 68 with an ambiguous offer.'"  (Doc. 94, at 7 (citing ***Arkla***

***Energy Resources v. Roye Realty & Devel., Inc.***, 9 F.3d 855, 867 (10th Cir. 1993)

(internal citations omitted).)  According to Plaintiff, a Rule 68 Offer "must 'specify

a definite sum' or other relief for which judgment may be entered, 'which plaintiff

can either accept or reject.'" (Doc. 94, at 7 (citing Wright & Miller, *Federal*

*Practice & Procedure: Civil* § 3002 (2d ed. 1997).)  Plaintiff also argues that

"where there is an applicable statute that provides for recovery of attorneys' fees as

part of costs," the offer must include costs, which in turn must include attorneys'

fees.  *Id*.

In its response, Defendant explains that its offer "pays a specified sum for

[Plaintiff's] claim for breach of contract and request for attorney's fees [paragraph

1] and then pays all of WFRA's non-attorney's fees [paragraph 3] . . . ." (Doc.

105, at 8.)  This, in the Court's opinion, adequately explains any ambiguity in the

offer that may have existed.

Defendant also argues that its offer does not need to include an amount for

Plaintiff's attorneys' fees as "costs" mandated by Rule 68.  (Doc. 105, at 4.)

According to Defendant,

> WRFA's principal claim is breach of contract for KCL's
> failure to pay accidental death benefits which WFRA
> claims it was owed.[2]  That breach of contract claim is
> statutory, and no underlying statute mandates attorneys'
> fees for a prevailing plaintiff.  K.S.A. § 40-256, which
> provides authority to award attorney's fees in certain
> circumstances, does not mandate an award of attorneys'
> fees to a claimant and instead requires that, in addition to
> prevailing on the underlying policy claim, the evidence
> must also show that the failure to pay the policy clam
> was 'without just cause or excuse.'  As such, attorneys'
> fees under K.S.A. § 40-256 are not mandatory or
> automatic, even if the plaintiff ultimately prevails on the
> underlying claim for coverage.  Because the statutory
> authority upon which WFRA relies for its claim for
> attorneys' fees allows under certain circumstances, but
> does not require, the payment of fees, KCL's Offer need
> not include <u>any</u> specific monetary amount separately
> identified for attorneys' fees.

(Doc. 105, at 4-5 (internal citations omitted).)  Plaintiff replies, however, that

"[t]he correct analysis is not whether fees are mandatory in the underlying

substantive law, it is whether the substantive statute – in this case K.S.A. § 40-256

– defines costs to include attorneys' fees."  (Doc. 112, at 3.)

Plaintiff's next argument in favor of clarifying or striking the offer is that it

---

[2]  Obtaining judgment against an insurance company on the plaintiff's right to the
policy proceeds is a condition precedent to the award of attorneys' fees under K.S.A. §
40-256.  ***Bergeson v. Dilworth***, 875 F. Supp. 733, 737 (D.Kan. 1995); ***Girrens v. Farm
Bureau Mut. Ins. Co.***, 238 Kan. 670, 715 P.2d 389, 397 (1986) (the court will not award
attorney fees under K.S.A. § 40-256 to an unsuccessful plaintiff). (Footnote contained in
Defendant's original text.)

is frivolous.  Plaintiff contends that because its claims are for the $100,000.00 to be paid under the policy, the $1,000.00 remaining (of the $101,000.00 offer) to compensate for attorneys fees is unreasonable given the duration of the litigation. (Doc. 94, at 10.)  As Defendant states, however, "a plaintiff's statutory right to attorney's fees 'may be voluntarily bargained away by the party so entitled' in connection with a Rule 68 offer of judgment."  (Doc. 105, at 8, quoting *Laskowski v. Buhay*, 192 F.R.D. 480, 482-83 (M.D. Pa. 2000).)  The Court agrees.

Finally, Plaintiff argues that the offer contains "impermissible conditions" because it includes a statement of release of claims Plaintiff "may have" against Defendant.  (Doc. 94, at 11.)  Defendant responds that this is not an impermissible condition, but rather "simply detail[ing] the legal implications of what happens when an offer is accepted."  (Doc. 9.)  Defendant's clarification establishes that the "release" would only include claims which would be mandatory in the present action.

The Court finds the Offer to be appropriate pursuant to Fed.R.Civ.P. 68.  As such, Plaintiff's motion (Doc. 93) is **DENIED**.

**C.**     **Motion to Quash Subpoenas (Doc. 98)**.

Plaintiff seeks to quash Defendant's records subpoenas to the following third parties:

1.    Transamerica Life Insurance Company

2.    Provident Life and Accident Insurance Company

3.    National Union Fire Insurance Company

4.    Glatfelter Claims Management

5.    Kansas State Firefighters Association

6.    U.S. Department of Justice

7.    City of Wichita

8.    City of Wichita, Wichita Fire Department

9.    Paul N. Uhligh [sic], M.D.

10.   Seventeen other health care providers, as named in the
      Notice.

(*See* Doc. 98.)

> **1.    Standing, timeliness, and mootness**.

Defendant raises two issues with Plaintiff's motion that, if decided in
Defendant's favor, would foreclose further analysis on some or all of Plaintiff's
arguments.  First, Defendant contends that Plaintiff lacks standing to quash these
motions.  "A motion to quash or modify a subpoena duces tecum may be made
only by the party to whom the subpoena is directed."  ***Peterbilt of Great Bend,***
***LLC v. Doonan***, 05-1281-JTM, 2006 WL 3193371, at *2 (D. Kan. Nov. 1, 2006)
(internal citation omitted).  Plaintiff replies that "[t]he files sought from the

16

insurance companies include financial information, such as how much WFRA paid for its insurance policies, and confidential personnel information about insured firefighters." (Doc. 119, at 2.)

Plaintiff's argument regarding the personnel information of the firefighters is tenuous at best considering the cases cited by Plaintiff involve the potential production of personnel records of *parties* themselves. (*See id.*, at 3, citing *Richards v. Convergys Corp*., 2007 WL 474012 (D.C. Utah 2007); *Arias-Zeballos v. Tan*, 2007 WL 210112 (D.C.N.Y. 2007); *Johnson v. Guards Mark Sec.*, 2007 WL 1023309 (D.C. Ohio 2007); *Dees v. Hyundai Motor Mfg. Alabama*, LLC, 2008 WL 821061 (M.D. Ala. 2008); *Barrington v. Mortgage IT, Inc*., 2007 WL 4370647 (S.D. Fla. 2007).)

As for the confidentiality of included financial information, this alone does not nullify the subpoenas. Even assuming financial information at issue is confidential, this does not mean the records are privileged and/or nondiscoverable. "'A respondent's interest in the nondisclosure and confidentiality of its financial records can usually 'be adequately protected by a protective order.'" *McCloud v. Board of Geary County Comm'rs*, No. 06-MLB-DWB, 2008 WL 1743444, at *4 (D.Kan. April 11, 2008) (citing *Audiotext Commun. Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *3 (D.Kan. March 26,

2007) (internal citation omitted).

Second, Defendant argues that the motion is both moot and untimely relating to the subpoenas issued on September 16, 2011, to Transamerica Life Insurance Company, Provident Life and Accident Insurance Company, National Union Fire Insurance Company, Glatfelter Claims Management, Kansas State Firefighters Association, U.S. Department of Justice, City of Wichita, and the Wichita Fire Department.  (Doc. 111, at 2, 6.)  The motion is moot, according to Defendant, because "[a]ll but three"[3] of these insurance companies and government entities "have complied with the subpoenas and produced to KCL the documents requested, without objection, and the time for the remaining three parties to object to the subpoenas has expired."  (*Id.*, at 6.)  Despite Plaintiff's reply indicating it would address the issue of mootness, the reply brief is instead focused on the issue of the timeliness of Plaintiff's motion.  (*See* Doc. 119, at 1-2.)  The Court agrees that Plaintiff's motion is moot as to these third parties.

In regard to the issue of timeliness, Defendant states that the motion is untimely regarding the subpoenas issued on September 16, 2011, "because the Motion was filed after the date by which the Subpoenaed Parties were to respond."

---

[3] The three remaining parties are Provident Life, National Union Fire, and the Dept. of Justice.  (*Id.*, at n.2.)

18

(Doc. 111, at 6.)  "It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena." ***Estate of Ungar v. Palestinian Auth***., 451 F.Supp.2d 607, 610 (S.D.N.Y. 2006).  Plaintiff replies that Defendant did not give it adequate and reasonable notice of its intent to issue the subpoenas.  (Doc. 119, at 1.)

For a variety of reasons, generally briefed by the Defendant and discussed at the hearing, Plaintiff's motion is **DENIED in part** with the exception of the documents requested from Dr. Uhlig, discussed below.  The Court finds certain of Plaintiff's objections to be moot and/or out of time (*i.e.*, those relating to parties who have already responded to the subpoenas, Doc. 111, at 6-7), and others to be overly generalized and/or irrelevant (*i.e.*, subpoenas other payers, Doc. 101, at 6-7).  Objections filed after subpoena response dates are untimely.

While some of the categories requested by Defendants (i.e. payment from other insurance companies) teeter on the edge of relevance, the Court is not prepared to say that this information could not lead to the discovery of admissible evidence.  "'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted).  "Relevance is

broadly construed at the discovery stage of the litigation and a request for

discovery should be considered relevant if there is any possibility the information

sought may be relevant to the subject matter of the action." *Smith v. MCI*

*Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991).  As the Court

explained to the parties at the hearing, the issue is not whether the information will

be admissible at trial, but whether it meets discovery threshold of relevancy.  The

Court finds that the requested information meets this minimal threshold.

     **2.**    **Captain Eck's Medical Records**.

     Plaintiff raised more specific arguments regarding the subpoenaing of Capt.

Eck's medical records.  Plaintiff contends that Defendant relied on its Medical

Director (Dr. Charlotte Lee) to support Defendant's denial of Capt. Eck's claim,

although Dr. Lee did not have access to Capt. Eck's medical records prior to his

death.  (Doc. 101, at 1.)  It is Plaintiff's position that Defendant

> is not entitled to discover any medical information
> concerning Captain Eck, other than that on which it
> relied to deny WFRA's claim.  It was (and is) WFRA's
> contention that if the defendant or Charlotte Lee, M.D.
> needed additional medical information to support Dr.
> Lee's conclusions, the insurance company was obligated
> as part of a reasonable investigation to locate that
> information before denying the claim.

(*Id.*, at 2.)

     Defendant offered to withdraw the medical records subpoenas from

20

providers who saw Capt. Eck before the fire at issue if Plaintiff "would 'agree not to introduce or present at trial any such medical records for services pre-dating the fire" and also 'agree not to circumvent the foregoing by offering medical testimony concerning Captain Eck's health or medical status as it existed before the fire.'" (*Id.*, at 2-3.)  Plaintiff contends it refused the stipulation "because it would have the effect of letting the insurance company avoid its burden of proof with respect to both its failure to investigate and its burden to prove the applicability of the exclusion . . . ."  (*Id.*, at 3.)  Defendant responds that it offered the stipulation because "the information is either relevant, and therefore discoverable, or it is irrelevant and cannot be introduced at trial."  (Doc. 111, at 11.)

Plaintiff argues that the subpoenas are "futile" because "[t]here is no issue in this case relating to the content of medical records other than those that were already in [Defendant's] possession when it made its coverage decision."  (Doc. 101, at 4.)  Plaintiff argues that the legal standard clearly states that "the circumstances existing at the time the payment of the loss is denied are those that determine liability."  (*Id.*, citing ***Hofer v. UNUM Life Ins. Co. of America***, 338 F.Supp.2d 1252 (D.Kan. 2004).)

At the hearing, Defendant argued that coverage cannot be "created."  Stated another way, Defendant explains that Plaintiff's basic position is that Defendant

21

failed to engage in an adequate review of Captain Eck's medical records before

denying coverage.  But, according to Defendant, even assuming this to be true,

such a failure does not create coverage under the policy that would not have

otherwise existed.  Rather, coverage either exists or it doesn't regardless of

whether Defendant engaged in an adequate review.  As such, Defendant argues that

it should be allowed to investigate the issue of whether or not coverage existed in

the context of all of Captain Eck's medical records – including those Defendant did

not review prior to making its decision.

Defendant also argues that Plaintiff's analysis improperly focuses on the

issue of attorneys fees.  According to Defendant, the information is relevant

because "the fact that an award of attorneys' fees hinges on information possessed

at one point in time does not prevent discovery of information that clearly bears

upon a separate and distinct question of whether the underlying insurance contract

was breached."  (Doc. 111, at 9.)  Defendant cites the case of ***Valley Forge Ins.***

***Co. v. Shah*** to support this proposition.  No. H-05-3056, 2009 WL 29108, at *7-8

(S.D. Tex. Jan 30, 2009) (internal citation omitted).  That case holds that  "[e]ven

though the facts before the insurer at the time [of denial] are key, 'post-denial

evidence may be relevant because there can be no claim for bad faith when an

insurer has denied a claim that is, in fact, not covered and the insurer has otherwise

22

breached the contract.'" *Id*.  Thus, according to ***Valley Forge***, "the starting point is

whether coverage exists."  *Id*.  Defendant argues this analysis establishes

relevancy.  Without reaching an opinion on the ultimate viability of this defense,

the Court agrees that the information is discoverable for this purpose.  Plaintiff's

objection is, therefore, overruled.

**3.**      **Dr. Uhlig's Records**.

In regard to Dr. Uhlig's records, Plaintiff contends that he is a retained

expert and, therefore, the information is privileged.  (Doc. 101, at 5-6.)  Defendant

responds that Dr. Uhlig has not been identified as a retained expert.  (Doc. 111, at

12.)  Further, Defendant argues that, even if he is considered a retained expert, he

did not get involved in the case until after Defendant denied Plaintiff's claim for

benefits and before Plaintiff retained its counsel.  Thus, according to Defendant,

Plaintiff's counsel "could not have been involved in work-product preparations at

that time, given that [Plaintiff's counsel] had not been retained with respect to this

matter until after the initial denial of benefits, which occurred" more than a month

after the date of Dr. Uhlig's report.  (*Id*.)  Plaintiff counters that Dr. Uhlig "has

been identified as plaintiff's expert witness and his expert report was submitted to

the insurance company contemporaneously with the claim for AD&D benefits."

(Doc. 101, at 5.)

The Court finds that Plaintiff's motion should be **GRANTED in part** as it relates to the documents requested from Dr. Uhlig.  The documents produced should be limited to those discoverable from an expert witness.

> Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> (i)     relate to compensation for the expert's study or testimony;
>
> (ii)    identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii)   identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed.R.Civ.P. 26(b)(4)(C).  Only these categories of information will be discoverable from Dr. Uhlig.  Plaintiff's Motion to Quash (Doc. 98) is, therefore, **GRANTED in part** and **DENIED in part**.


**IT IS THEREFORE ORDERED** that Defendant's "Motion for Protective Order Governing the Deposition of Dr. Charlotte Lee" (Doc. 80) is **DENIED** as more fully set forth above.  Concurrently, Plaintiff's "Motion to Compel

Deposition of Charlotte A. Lee, M.D." (Doc. 95) and Plaintiff's "Motion Requesting the Court to Consider Plaintiff's Motion to Compel the Deposition of Defendant's Medical Director, Charlotte Lee, M.D., Out of Time" (Doc. 108) are both **DENIED as moot**.  Plaintiff's request for sanctions is **GRANTED** as stated above.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Clarify Offer of Judgment and to Strike" (Doc. 93) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Quash Subpoenas" (Doc. 98) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 16th day of December, 2011.

 s/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge