# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WICHITA FIREMEN'S RELIEF ASSOCIATION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 11-1029-KGG |
| KANSAS CITY LIFE INSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) _____ ) | |

## MEMORANDUM & ORDER DENYING
## PLAINTIFF'S CLAIM FOR FEES PURSUANT TO K.S.A. §40-256

This action was brought by Plaintiff Wichita Fireman's Relief Association (WFRA) on behalf of its member, the late Captain Urban Eck, to recover an accidental death and dismemberment (AD&D) benefit in a life insurance policy issued by Defendant Kansas City Life Insurance Company (KCL)[1]. After proper application by WFRA, KCL paid the death benefit but denied the AD&D benefit. At trial, the jury found that Captain Eck's death was within the AD&D coverage, and awarded the plaintiff the $100,000 benefit on Captain Eck's behalf.

Now before the Court is Plaintiff WFRA's attorneys fee claim under K.S.A. § 40-256, which provides for the payment of fees if the insurer refused to pay the

---

[1] WFRA is the named beneficiary of the policy, but will pay the proceeds of the recovery to Captain Eck's beneficiaries.

claim "without just cause or excuse."[2]  Following the jury trial the Court accepted additional evidence on this claim, and ruled that, to the extent relevant, the jury trial evidence would also be considered.

Under Kansas law, K.S.A. §40-256 requires the court award attorneys fees if an insurer "has refused without just cause or excuse to pay the full amount of such loss."  This standard is satisfied if the plaintiff establishes that the denial of the claim was "frivolous, unfounded and 'patently without any reasonable foundation.'"  ***Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas***, 268 Kan. 121, 131, 992 P.2d 800 (1999) (*citing* ***Clark Equip. Co. v. Hartford Accident & Indemn. Co.***, 227 Kan. 489, 494, 608 P.2d 903 (1980)).  "A refusal of payment is not unfounded or frivolous if there exists a good faith legal controversy as to coverage or a bona fide and reasonable factual dispute."  ***First Nat. Bank, Abilene, Tx. v. American States Ins. Co.***, 134 F.3d 382 (Table), 1998 WL 30246, *4 (10th Cir., Jan. 9, 1998) (*citing* ***Clark Equip. Co.***, 608 P.2d at 907)).

Whether just cause exists is to be determined by the circumstances facing the insurer when payment is denied, judged as they would appear to a reasonably

---

[2] Plaintiff brought the fees claim as a separate count in its Complaint (Doc. 331), rather than by motion following trial.  The parties, and the Court, agreed that this choice of procedure is irrelevant.  The parties also agreed, and the Court ruled, that the question of liability for fees under K.S.A. § 40-256 is determined by the Court (Doc. __).

prudent person having a duty to investigate in good faith. *Hartford Cas. Co.*, 268 Kan. at 131. "Whether an insurance company's refusal to pay is without just cause or excuse is determined on the facts and circumstances of each case." *Foster v. Stonebridge Life Ins. Co.*, 50 Kan.App.2d 1, 27, 327 P.3d 1014 (2014). It is not dispositive that a jury ultimately finds in favor of coverage. *See, e.g.,* **Kovach v. State Farm Gen. Ins. Co.**, No. 88-2099-S, 1989 WL 94574, *1 (D. Kan. July 28, 1989) ("The fact that the jury returned a verdict in favor of plaintiff on the issue of liability does not automatically entitle plaintiff to recovery of attorney's fees under the Kansas statute."); **Koch v. Prudential Ins. Co. of America**, 205 Kan. 561, 565, 470 P.2d 756 (1970) (stating that fees are not to be awarded under § 40-256 "merely for the reason that it turned out at the trial" there was "no reason for denial of liability").

## FACTS

WFRA submitted the initial claim, which was denied after consideration by an *ad hoc* committee of KCL officials. The WFRA was provided a right to appeal by the contract, and did so, submitting some additional information.[3] The claim

---

[3] The appeal in this case was occasioned by KCL policy, and by an attachment to the policy which referenced ERISA (Employment Income Security Act of 1974) rights. The Court finds that the "ERISA" attachment was part of the policy and part of the contract. The terms on that attachment apply in this case. This Court previously ruled that ERISA itself was inapplicable to this claim, but the "appeal" procedures that were followed were treated as part of the agreement by the parties. ***Wichita Firemen's Relief***

was denied again.[4]  The facts provided to the KCL in the claim and appeal, including the medical conclusions by Captain Eck's physicians and the basic facts medical conclusions reached by KCL's medical director, were essentially in agreement.

Captain Eck was a firefighter with the Wichita Fire Department.  He was in apparent good health with no history of heart problems when, on December 13, 2009, he participated in fighting a large fire.  He exerted himself physically in that activity, but there is no evidence this exertion was out of the ordinary for a firefighter.  Immediately following the fire on December 13, he participated in routine medical monitoring.  He uncharacteristically required a longer time to return to baseline vital signs.  At his next duty shift on December 16, 2009, he reported feeling unusually tired and congested and could not recover as he normally did after exertion.  He told others he felt he had never fully recovered from the December 13th fire.

On December 18 and 19, 2009, Captain Eck sought medical care for these

---

*Assoc. v. Kansas City Life Ins. Co.*, No. 11-1029-KGG, 2014 WL 588064, at *13-14 (D. Kan. Feb. 14, 2014).  The Court continues to reject Plaintiff's attempt to apply ERISA legal standards to this matter.

[4]  There were some continuing negotiations after the appeal denial and KCL claims that it was still re-considering the claim when the lawsuit was filed.  However, these were clearly in the nature of settlement negotiations after the denial was complete.  The denial was complete after the denial of the appeal.

and other progressive symptoms of shortness of breath, chest tightness, and difficulty breathing while lying flat. He visited his physician and a cardiac specialist.

Physicians concluded that Captain Eck had ruptured chordae tendineae, which are the parachute-string-like structures supporting a heart valve leaflet. This caused mitral valve insufficiency, which required surgery. It was found that Captain Eck had a pre-existing condition called myxomatous degeneration, a progressive condition which compromises the strength of the chordae. This condition, although asymptomatic, predisposed his heart to the rupture suffered when fighting the fire.

Captain Eck was placed on medication, hospitalized and released, and surgery was scheduled for December 29, 2009. He returned to the hospital to undergo surgery to repair the rupture. During the surgery, the surgeon inadvertently kinked an artery, which caused a heart attack. The heart attack directly resulted in Captain Eck's death.[5] The physicians concluded that the rupture of the chordae was an acute event which happened as a result of extreme

---

[5] The opinion of Defendant's trial expert that the rupture was not acute is not appropriate for consideration on the present issue because it was not part of the circumstances facing the insurer at the time of the denial of the claim (or before suit was filed).

physical exertion while fighting the fire. The documents included the death certificate signed by his physician Dr. Koehler certifying that the "manner of death" was "natural." Dr. Koehler could have chosen "accident" on that form.

The AD&D policy provided coverage if Captain Eck's death resulted "directly and independently of all other causes from accidental bodily injuries." A separate exclusion provided that "[n]o amount will be payable for loss caused by, contributed to or resulting from: 5) bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease."

The claim was reviewed by five officials from KCL who were assembled as a committee for the purpose of reviewing this claim after it was referred by the initial claims examiner through her superior. Those officials were Donna Shields (Manager of Customer Service and Claims), Anne Snoddy (Vice President of Claims), Dale Dake (Assistant Vice President of New Business), Matthew O'Connor (legal counsel), and Dr. Charlotte Lee (Medical Director)[6]. Snoddy, the Vice President of Claims had been with KCL more than 30 years. Shields, the Manager of Customer Service and Claims, reported to Snoddy. O'Connor, assistant general counsel, has been a practicing attorney for 18 years. Dake has

---

[6] Dr. Lee, an M.D., is not a cardiologist. She but completed a fellowship in clinical cardiology in her early training. She is board certified from the American Board of Insurance Medicine.

been with KCL for 26 years and in the insurance industry 10 years before that.

O'Connor performed some legal and medical research in association with the claim, and told the group that his research supported the denial of the claim. The exact nature of that research is unknown. O'Connor drafted the denial letter. There were no written policies or guidelines at KCL that governed the claim review. The committee did not request additional information. The five met twice before the initial denial and agreed that there was no coverage under the policy.

After the first meeting, Dr. Lee was asked to clarify her conclusions in writing. She reached the following conclusions:

> There is a question of whether or not the deceased died from an accidental cause of death. The claim is for accidental death benefits because of death due to injuries suffered from working in a fire December 13. The cause of death was stated to be a massive heart attack suffered because of surgery to repair a ruptured chordae tendinae of the mitral valve. The rupture was felt to have been acute and likely a result of extreme exertion during his fire-fighting activities on December 13. I do not have access to his medical records prior to his death, so will not comment on his previous cardiac status. There is reportedly a family history of coronary artery disease. He was found at autopsy to have myxomatous degeneration of the mitral valve, but it is not known whether this was known prior to death. Such a change in the valve is not an acute change, rather is either present at birth or comes about gradually over time.
>
> After having continued shortness of breath, chest tightness, and difficulty breathing while lying flat, he had

a cardiac evaluation that revealed mitral insufficiency with myxomatous degeneration of the mitral valve and a ruptured chordae. He underwent surgery to repair the valve and never recovered from surgery. At autopsy, he was found to have had a massive heart attack that was felt to be due to compromise of one of the coronary arteries during the mitral valve surgery.

The description of the policy benefit states in #1 under **The Benefit** that benefits are payable if the loss results directly and independently of all other causes from accidental bodily injuries.[7] #5 under **Exclusions** states that no amount will be payable if the loss was caused by, contributed to, or resulted from: bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease. Even though extreme exertion can contribute to rupturing of a chordae in someone who has pre-existing valvular or coronary artery disease, I do not consider his death as having been caused by bodily injuries suffered while acting as a fire fighter. Regarding the exclusion, the fact that the immediate cause of death was the heart attack that was suffered as a result of compromising the coronary artery during surgical treatment of his valve, this death is considered a direct result of that surgery and hence is an excludable event.[8]

In the initial denial letter to WFRA, KCL stated:

Thank you for allowing us time to review your request.

---

[7] Dr. Lee considered the presence of an external force necessary to find that the loss was caused by an accident. Mr. Dake also held that opinion.

[8] KCL medical director Dr. Lee testified that she did not read Dr. Kohler's or Dr. Uhlig's letters before reaching this opinion. Her medical opinion that the rupture was acute and caused by exertion was not contrary to those physician's opinions. She also testified that she reviewed only the exclusions portion of the policy – a curious statement given that she also quotes the benefits section in her written opinion.

> After evaluation of the information provided the request for payment under the Group Accidental Death and Dismemberment Rider is being denied, as the death was not caused directly and independently of all causes from accidental injury as the insured's underlying heart condition, as well as circumstances surrounding the surgery, contributed to his death and therefore, the applicable exclusions of the policy apply.  The description of the policy benefit states that benefits are payable if the loss results directly and independently of all other causes from accidental bodily injuries. Under the Exclusions it states, No amount will be payable for loss caused by, contributed to or resulting from:  **(5) Bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease.** If you disagree with this determination, the beneficiary may appeal this claim decision by sending their written request for review to Kansas City Life Insurance Company within 60 days of receipt of this notice. If they wish, they may submit additional information as well as their comments and views of the issues, in writing, and may examine pertinent documents.  However, we must have written authorization from the treating physicians before they can review medical information.

WFRA appealed the decision and provided additional documentation, mostly medical records.  After review of the appeal and additional information, the claim was denied again. Legal Counsel O'Connor apparently decided and denied the appeal after consulting with Snoddy and Shields.  O'Connor wrote a denial letter advising WFRA:

> This letter is in follow up to our phone conversation regarding the above referenced claim.  First, please accept the condolences of Kansas City Life Insurance Co.

and its employees. We are truly sorry for your loss and for the heartache endured by the Eck family. Your April 26, 2010 letter requests an appeal of KCL's denial of the Accidental Death Benefit ("ADB") in connection with Mr. Eck's death. KCL notes that it has paid the underlying claim of $100,000 and that your appeal is limited to the ADB benefit, which is also $100,000.

The ADB Rider states that accidental death benefits will be paid 'when the loss…results directly and independently of all other causes from accidental bodily injuries.' (Page 1 of the ADB Rider, 'The Benefit' definition, section (1), a copy of which is enclosed). The ADB Rider further states:

> 'EXCLUSIONS
> No amount will be payable for loss caused by, contributed to or resulting from: (5) bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease.'

In this case, Mr. Eck's death did not result directly and independently from accidental bodily injury. Rather, at least two other factors contributed to his death, precluding the payment of the ADB benefit. First, Mr. Eck suffered from an underlying medical condition, namely myxomatous degeneration of the mitral valve in his heart. Such a change in one's heart valve is not an acute change; rather, it is either present at birth or comes about gradually over time. Indeed, Mr. Eck may not have known that he suffered from this underlying condition. This condition contributed to Mr. Eck's death. As a result, under the terms of the ADB rider quoted above, Kansas City Life is not obligated to pay the ADB benefits. Second, the actions of the surgeon in the attempted repair of Mr. Eck's degenerative heart condition appear to have contributed to his death. Specifically, during the surgery, Mr. Eck's coronary

10

> artery was compromised causing him to suffer a heart attack which contributed to his death. The compromising occurred as a result of surgical treatment of Mr. Eck's underlying degenerative heart condition. As your letter acknowledges, '[Eck] ultimately died from complications arising from surgical treatment of the physical injury he sustained fighting the fire.' As such, under the terms of the ADB rider quoted above, Kansas City Life is not obligated to pay the ADB benefits.

## DISCUSSION

There was no material factual or medical dispute at the time the claim was denied. Although there was a great deal of medical information, the essential facts were understood by Dr. Lee and KCL as those presented by Captain Eck's physicians. (1) Before the fire he had a predisposing condition (myxomatous degeneration) which made him more vulnerable to the risk of chordal rupture. (2) That condition was progressive and he had likely had the condition for some undetermined period of time. (3) That condition had caused him no symptoms and did not, before the chordal rupture, require surgical intervention. (4) During the fire, Captain Eck suffered an acute rupture of chordae tendineae caused by exertion while fighting the fire. (5) Captain Eck's symptoms following the fire were caused by the chordal rupture. (6) The surgery was required to repair the chordal rupture. (7) Captain Eck's death was directly caused by a surgical mishap which occurred during the surgery when the surgeon kinked an artery, resulting in a heart attack.

These are the medical facts found by KCL's medical director, Dr. Lee, and, factually, constitute the circumstances facing the insured at the time of the denial.[9] While the Plaintiff urges a finding that there was an inadequate factual investigation, it is clear that at the time of the denial KCL was confronted by the same facts now, and then, urged by WFRA. Although KCL had a duty to investigate the facts of the claim (***Foster***, 50 Kan.App.2d at 27), no amount of investigation would have altered these facts more in WFRA's favor. This case is, therefore, not about a failure to perform an adequate fact investigation. *See* ***Farm Bureau Insurance Co. v. Carr***, 215 Kan. 591, 598, 528 P.2d 134, 140 (1974) (cases dealing with duty to investigate inapplicable when never any significant dispute over the facts). Plaintiff's complaints concerning the quality of the factual investigation are illogical in light of the fact, as recognized in Plaintiff's memorandum, that KCL's "medical director agreed with [Captain Eck's physicians] on the key medical facts and on causation." (Plaintiff's Trial Brief, Doc. 536, at 3).[10]

The dispute in this case at the time of the denial was not factual. Rather, the

---

[9] The possibility that some members of the committee did not understand that Dr. Lee believed the rupture was acute and caused by exertion at the time of the fire does not change these were the proper facts facing KCL at the time of the denial.

[10] Equally without impact on the ultimate question is the clerical failure of KCL officials to complete and sign an "ADB" form that was part of the KCL file.

parties differed in their application of policy provisions to the facts.  The issue was always whether, under these facts and within the meaning of the policy, the acute rupture of Captain Eck's chordae tendineae as a result of the substantial physical stress of his usual employment and his predisposition to that injury because of a pre-existing condition constituted an "accidental bodily injury" which, together with the resulting surgery, resulted in his death "directly and independently of all other causes" within the meaning of the policy.

It is clear that the judgment of KCL in denying the claim was that it did not and that the surgical mishap itself could not be an independent "accident" because of the policy surgical exclusion.  The question for the Court at this juncture, then, is whether this position, at the time of the denial, was "frivolous, unfounded and 'patently without any reasonable foundation.'"  ***Hartford Cas. Ins.***, 268 Kan. at 131 (*citing **Clark Equip. Co.***, 227 Kan. at 494), or whether it was "a good faith legal controversy as to coverage."  This determination is to be made from an objective review of the facts and circumstances at the time of the denial.

There were objectively three good-faith grounds for the denial.  These are those articulated by KCL in the denial letters.

First, coverage required an "accidental bodily injury."  The legal position that this condition required an external force, or perceptible accidental event, while

13

not prevailing at the Court of Appeals, was not "frivolous."[11]  However, even under the standard as clarified by the Court of Appeals (and incorporated into the jury instruction at trial), it was far from frivolous for KCL to take the position that there was no "undesigned, sudden, and unexpected event, usually of an afflictive character, and often accompanied by a manifestation of force," that resulted in the chordal rupture, whether the force is considered as coming from within or from without.  The "force" and the "accident," to be within the coverage, must have

---

[11] This Court initially granted summary judgment in this case on this issue – a ruling that was reversed by the appellate court.  Neither of those rulings resolve the present issue as a matter of law.  There were some differences between the evidence considered by this Court in the summary judgment process and that considered or available to KCL at the time of the denial.  Also, it is possible that both this Court and KCL were so wrong on this question as to render the denial "frivolous, unfounded and patently without any legal foundation."  The appellate court recognized the essential dispute – that WFRA focused on the acute rupture at the time of the fire while KCL focused on the decedent's chronic mitral valve disease.  The appellate court assumed, appropriately when reviewing a grant of summary judgment, that the death was caused by the acute rupture of the chordae tendineae caused by extreme physical exertion while fighting the fire.  The appellate court faulted this court for relying on language from a Kansas Supreme Court case (***Miller v. Prudential Ins. Co. of Am.***, 183 Kan. 667, 331 P.2d 310 (Kan. 1958), which the appellate court considered an "anomaly" in Kansas law.  The Court approved the basic legal standard applied by this Court, that accident is defined as "an undesigned, sudden, and expected event, usually of an afflictive character, and often accompanied by a manifestation of force."  The appellate court reminded this Court that the force contemplated by the definition could be a "force from within."  The appellate court remanded this case for trial, finding that the rupture of chordal structures within Mr. Eck's heart could be found by a jury to be unexpected and unforeseen, even given that fighting fires under strenuous conditions was within his line of duty.  The appellate court found that the "jury would have been authorized" to conclude that Mr. Eck's loss was caused by "accidental bodily injury" under the policy.  That analysis illustrates the good faith legal dispute on this issue.

been the rupture itself, or the exertion which, with the predisposing condition, caused the rupture. This exertion was not clearly unexpected for a fireman. While the jury had the discretion to find that this constituted an "accidental injury" within the meaning of the policy, it was reasonable for KCL to take the position it was not.

Secondly, even if there was an "accidental injury," coverage required that death be caused "directly and independently of all other causes" by the accidental bodily injury. There is no question in the records considered by KCL that Captain Eck's heart valve had a predisposing and progressive condition (myxomatous degeneration). So even if the acute rupture caused by exertion was an accident, a finding of coverage may be fairly read to require that the death was independent of any other cause. This was a question for the fact-finder in this case, but it was not frivolous for KCL to deny coverage on the basis that the predisposing condition was a contributing cause.

Finally, if there was no "accidental injury," the surgical mishap itself as a cause of death is excluded by the exclusions cause.[12] It was not frivolous for KCL

---

[12] Of course, if the surgery was *for* an accidental bodily injury, the exclusion would be inapplicable. That some members of the committee were confused about this at trial does not change the objectively appropriate consideration of this issue at the time of the denial.

15

to view the rupture and surgery as continuing events in the progressive myxomatous degeneration – thus viewing the death has cause by a non-accidental "bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease."

Plaintiff urges reliance on ***Foster v. Stonebridge Co.***, 50 Kan.App.2d 1, in support of this claim.  In ***Stonebridge***, also an AD&D claim, the decedent suffered broken hip in a fall and then died as a result of complications from surgery.  The insurance company plainly failed to understand the medical records, and failed to understand that the surgery was necessitated by an accident.  Though similar to the present case, ***Stonebridge*** is factually distinguishable.  The fall in Stonebridge was unambiguously an "accident," unlike the internal medical injury in this case, which was precipitated, in part, by a preexisting and predisposing medical condition.  Also, unlike the insurer in ***Stonebridge***, the medical facts were reviewed and understood by KCL in this case, which made a reasonable, although ultimately not prevailing, application of the facts to the policy.

Plaintiff also urges the Court find that violations by KCL of the Kansas Uniform Trade Practices Act, K.S.A. §40-2404(9) and applicable regulations support its claim under K.S.A.  §40-256.  There is no private cause of action under the KUTPA.  ***Bonnel v. Bank of America***, 284 F.Supp.2d 1284, 1289 (D. Kan.

2003). It does not appear that any court has applied the KUTPA or regulations (*e.g.,* K.A.R. 40-1-34) to find a violation of K.S.A. §40-256, although this Court does not rule whether such might be a proper consideration in an appropriate case on the issue of bad faith. In the present case, the Court finds that there was no violation of those standards which was logically and casually related to a bad faith denial of the claim or which is relevant to the bad faith issue in this particular case.

The insurer was faced with a factually and medically unusual case which required a non-routine interpretation of the policy. The facts presented to and found by KCL were consistent with the medical records and would not have been improved through additional investigation. The law was unclear, with cases providing competing standards. But even as understood through the clarified hindsight of the legal history of this case, the application of the that law and the policy language to the facts did not dictate a clear, single result. Viewed objectively under the circumstances facing KCL at the time of the denial, the evidence does not support a finding of bad faith.

The claim for attorneys fees is, therefore, **DENIED**.[13]

---

[13] The Court deferred ruling on some evidentiary issues at trial. Defendant's objection to the admission of Plaintiff's Bench Trial Exhibits 23 and 24, the affidavits of Jeffrey Seeman and Cynthia Anderson, and to KCL Interrogatory Responses (Plaintiff's Bench Trial Exhibit 30) on the basis of hearsay are overruled, and those exhibits are admitted. Defendant's objections to testimony and exhibits concerning post-claim denial settlement discussions have been withdrawn (Doc. 535 note 5), so that evidence is

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 21st day of February, 2017.

           S/ KENNETH G. GALE
           Kenneth G. Gale
           United States Magistrate Judge

---

admitted. As to this last, the Court does not consider this evidence particularly relevant because the final denial had occurred before these negotiations.  Also, the settlement offer made by KCL was just that, an offer, not a "tender" of payment, which is something very different.